# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| v. § | No.  4:20-CR-00358 |
| § | Judge Mazzant |
| JOHN RODGERS (2) § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the United States' Motion to Quash Defendant Rodgers's Subpoenas for Testimony by Current and Former U.S. Department of Justice Attorneys (Dkt. #89). Having considered the motions and the relevant pleadings, the Court finds the motions should be **GRANTED.**

### BACKGROUND

The background of this case is more thoroughly set forth in the Court's Order on Defendants' Motion to Dismiss (Dkt. #56).  Highly summarized, on April 15, 2021, Defendants Neeraj Jindal ("Jindal") and John Rodgers ("Rodgers") were charged with: (1) conspiring to fix prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count One); (2) conspiring to commit multiple offenses against the United States in violation of 18 U.S.C. § 371 (Count 2); and (3) obstructing proceedings before the Federal Trade Commission in violation of 18 U.S.C. § 1505 (Count Three and Four) (Dkt. #21).

On March 22, 2022, pursuant to 28 C.F.R. § 16.23 and *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), counsel for Defendant Rodgers requested trial testimony from four current or former employees of the U.S. Department of Justice (the "DOJ")—namely, the Antitrust Division's Principal Deputy Assistant Attorney General Doha G. Mekki ("Mekki"), Assistant

Chief Megan S. Lewis ("Lewis"), former Trial Attorney Katherine Stella ("Stella"), and FBI Special Agent Jeffrey Pollack ("Pollack") (Dkt. #89 at p. 4). Rodgers's *Touhy* request represents that he seeks their testimony "to discuss the analysis of the evidence, interviews with witnesses related to the investigation, and their belief that Rodgers's version of events is the truth" (Dkt. #89, Exhibit 4 at p. 2). On March 28, 2022, Rodgers filed a witness list that includes these four individuals (Dkt. #68). Rodgers's witness list states that these witnesses "will testify concerning [their] opinion of John Rodgers's truthfulness" (Dkt. #68 at p. 1).

On March 31, 2022, Assistant Attorney General Jonathan S. Kanter ("Kanter") responded to Rodgers's *Touhy* request (Dkt. #89, Exhibit 5). According to Kanter's letter, the DOJ authorized Pollack "to testify as to interviews with witnesses related to the investigation" of this case and of which he has personal knowledge (Dkt. #89, Exhibit 5 at p. 3). However, the DOJ also determined that Pollack "is not authorized to disclose" certain information such as "information protected by privilege, such as the deliberative process privilege and work product doctrine" (Dkt. #89, Exhibit 5 at p. 3). Further, the letter indicates that Mekki, Stella, and Lewis are not authorized to testify because "[t]he deliberative process privilege and work product doctrine protect their analyses of the evidence, including interviews with witnesses, and personal beliefs and mental impressions" (Dkt. #89, Exhibit 5 at p. 3). Additionally, according to Kanter's letter, "[t]he testimony sought is also irrelevant and inadmissible" (Dkt. #89, Exhibit 5 at p. 3).

On March 31, 2022, the Government filed the present motion to quash (Dkt. #89). On April 1, 2022, Rodgers filed a response (Dkt. #98). On April 2, 2022, the Government filed a reply (Dkt. #99).

## ANALYSIS

The Government moves to quash Rodgers's subpoenas for testimony by Mekki, Lewis,

and Stella (collectively the "DOJ Witnesses")[1] for several reasons (Dkt. #89).  First, the Government argues that because the DOJ Witnesses have not received express authorization to testify from the DOJ, their attendance would be futile as they will state that they are not authorized to answer (Dkt. #89 at p. 10). [2]  Second, the Government argues that the testimony sought by Rodgers is protected by the deliberative process privilege and the attorney work product doctrine (Dkt. #89 at p. 8).  Third, the Government argues that the testimony Rodgers seeks is inadmissible under the Federal Rules of Evidence (Dkt. #89 at p. 10).  More specifically, the Government asserts the Court should exclude the testimony because it is irrelevant, substantially more prejudicial than probative, and inadmissible under Rule 405 (Dkt. #75 at p. 19).  Rodgers disagrees on all points (Dkt. #98). The Court examines the Government's arguments in turn.

I.      **The *Touhy* Regulations**

Federal agencies are permitted to promulgate regulations, known as *Touhy* regulations, governing the disclosure of information pursuant to a movant's request. *CF Indus., Inc. v. Dep't of Justice Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 692 Fed. App'x. 177, 181 (5th Cir. 2017). The DOJ's regulations, set forth at 28 C.F.R. §§ 16.21 *et seq*., provide procedures and standards that govern the production or disclosure of any material or information in its files or within the knowledge of its employees, acquired by reason of their official duties, when responding to subpoenas issued in litigation. *Beckett v. Serpas*, No. 12-910, 2013 WL 796067, at *2 (E.D. La. Mar. 4, 2013) (citing 28 C.F.R. §§ 16.21–16.26).  Once the demand containing the summary of the testimony sought is submitted, the appropriate persons in the DOJ will decide whether the testimony will be disclosed. *See* 28 C.F.R. §§ 16.23 and 16.24.

---

[1] The United States does not move to quash Pollack's subpoena (Dkt. #89).
[2] However, in its reply, the United States expressly notes that it "does not seek to quash the subpoenas for failure to comply with 28 C.F.R. § 16.23" (Dkt. #99 at p. 4 n.3).

Here, there is no disagreement over whether Rodgers complied with the *Touhy* procedures in seeking the testimony of the DOJ Witnesses (*see* Dkt. #89, Exhibit 4). Indeed, on March 22, 2022, counsel for Rodgers sent a formal *Touhy* notice to Kanter for the testimony of the DOJ Witnesses (*see* Dkt. #89, Exhibit 4). However, the parties strongly disagree over the effect of Kanter's response to Rodgers's *Touhy* request—namely, the DOJ's determination that the DOJ Witnesses are not authorized to testify (Dkt. #89, Exhibit 5). On the one hand, the Government relies on *Touhy* and asserts that "[a] federal [agency] employee cannot be compelled to comply with a subpoena for testimony when the employee's agency has not authorized the testimony" (Dkt. #89 at p. 8).[3] On the other hand, Rodgers argues that only non-compliance with the applicable *Touhy* regulation's procedure for requesting information would be a basis for quashing a subpoena (Dkt. #98 at p. 2), and thus the DOJ's decision cannot be an independent basis for quashing the subpoenas. Indeed, Rodgers claims that "the reach of disclosure-limiting *Touhy* regulations ends at the courthouse doors" (Dkt. #98 at p. 2) (internal quotations and citations omitted).

There is much disagreement among courts about what happens when an agency decides that it will not produce documents or an employee under its own regulations. *See United States v. Fuentes-Correa*, No. 13-71, 2013 WL 588892, at *7 (D. P.R. Feb. 13, 2013) (observing disagreement among courts). Some courts have refused to review the decision. *See e.g.*, *United States v. Vander Luitgarten*, No. 07-211, 2008 WL 2610465, at *3 (M.D. Fla. June 30, 2008) (granting Government's motion to quash on the "basis of *Touhy*"). Other courts have held that the decisions are reviewable, but those courts have further disagreed on the type of review used. *Butowsky v. Folkenflik*, No. 4:18CV442, 2019 WL 12373861, at *9–*10 (E.D. Tex. Dec. 13, 2019)

---

[3] However, the United States' view on the matter is not entirely consistent. In its reply, the United States argues "[t]he Department's decision is reviewable under the arbitrary and capricious standard of the Administrative Procedure Act" (Dkt. #99 at p. 4) (citing *Moore v. Armour Pharm. Co,*, 927 F.2d 1194, 1197–98 (11th Cir. 1991)).

(noting that courts of appeals are split on the applicable standard of judicial review used for reviewing the validity of a federal agency's decision of a *Touhy* request and summarizing the two different views of courts). Among the courts that have held the decisions are reviewable, some have applied the arbitrary and capricious standard set forth in the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551–559, *see e.g.*, *Moore*, 927 F.2d at 1197, while others have analyzed the decisions under the appropriate rules of procedure and various privilege rules governed in a case. *See e.g., Watts v. S.E.C.*, 482 F.3d 501 (D.C. Cir. 2007). To complicate matters further, the majority of courts that have considered this issue have done so in the context of civil cases—not criminal cases where the Government is a party.

After reviewing the cases and distilling the principles from them, the Court reaches several conclusions. To begin, the Court finds that the Government's decision to withhold information pursuant to the *Touhy* regulations is judicially reviewable. As the First Circuit has explained, "the *Touhy* regulations are only procedural, and do not create a substantive entitlement to withhold information." *Puerto Rico v. United States*, 490 F.3d 50, 62 (1st Cir. 2007). This conclusion accords with the overwhelming majority of courts that have considered the issue, albeit mostly in the civil context. *See Butowsky*, 2019 WL 12373861, at *9–*10 (summarizing the circuit split and finding the disagreement to be over the appropriate standard of review, not whether the decision is reviewable at all).

As to the more difficult question—which standard of review to apply—the Court finds that requests under *Touhy* in this case should be treated as they would any other request for evidence and according to the principles normally applied in criminal cases. *See Fuentes-Correa*, 2013 WL 588892, at *8 (same) (collecting cases); *see also United States v. Klein*, No. 16-CR-442, 2017 WL 782326, at *1 (E.D.N.Y. Feb. 28, 2017) (analyzing under privilege principles). Stated differently,

5

the Court will *not* undertake a deferential standard of review to the DOJ's decision. The Court reaches this conclusion for two main reasons. First, many of the courts that have applied the APA standard have done so because a state court-issued subpoena was at issue and the APA provided the only waiver of sovereign immunity under which the Government's actions could be reviewed. *Beckett*, 2013 WL 796067, at *3. Thus, in the context of a state-court subpoena, the review was controlled by the APA's standard of review. *Butowsky*, 2019 WL 12373861, at *10. However, where, as here, the Government tries a defendant in its own courts, no issue of sovereign immunity is present. *Fuentes-Correa*, 2013 WL 588882, at *6. Second, the Court recognizes that "[f]ederal criminal prosecutions initiated by the Government present special circumstances that are not present" otherwise, which persuades the Court that a deferential review is less appropriate in this instance. *See id.* at *7.

Moreover, the Court finds support for its view in *United States v. Reynolds*, 345 U.S. 1 (1953), the only Supreme Court case that cites *Touhy*. In *Reynolds*, the widows of several civilian observers who had died in the crash of an Air Force flight sued the Government for damages under the Federal Tort Claims Act. *Id.* at. 3. Pursuant to Federal Rule of Civil Procedure 34, the plaintiffs moved for production of the Air Force's official accident investigation report. *Id.* However, the Government refused to produce the report, citing a regulation that vested the Secretary of the Air Force with discretion on whether to produce such material. *Id*. at 3–4. When the issue reached the Supreme Court, the Court found that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *Id*. at 9–10. The Supreme Court then proceeded to analyze the matter under Rule 34, asking whether the evidence sought was privileged. *Id*. at 6. Ultimately, the Supreme Court held that the privilege must be formally asserted and that the "court itself must determine whether the circumstances are appropriate for the claim of privilege." *Id.* at

8. The Court is persuaded that the reasoning in *Reynolds* should apply with equal force here.

Upon a closer inspection of *Reynolds*, several aspects of the decision stand out to the Court. First, *Reynolds* "strongly supports the notion that where the Government is already a party to a case, the court, and not the executive, is empowered to decide whether evidence should be produced." *Fuentes-Correa*, 2013 WL 588892, at *6 (discussing *Reynolds*). Second, when "the United States is already a party, the correct forum for judicial control is not the APA; it is, rather, the underlying case, where the issue will be governed by the law of evidence of that would normally control." *Id.* at *7. Third, though *Reynolds* itself was a civil case, the Supreme Court recognized the special nature of criminal cases. In explaining why the Government's ability to invoke evidentiary privileges is treated differently in the criminal context, the Court stated: "[S]ince the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *Id.* at 12. Thus, based on the analysis in *Reynolds*, the normal substantive law of privilege and rules of evidence—not the arbitrary and capricious standard of the APA—applies to the Government's motion to quash here.

Accordingly, to summarize, the Court finds that the DOJ's denial of Rodgers's *Touhy* request is reviewable. In other words, Rodgers is correct that the DOJ's decision is not an independent basis for quashing the subpoenas. As for the standard of review, the normal substantive law of privilege and rules of evidence should apply. With this framework in mind, the Court now turns to the Government's next argument that the deliberative process privilege and attorney work product doctrine protect the testimony sought by Rodgers.

## II.  The Deliberative Process Privilege and the Work Product Privilege

In determining whether the subpoenas should be quashed based on the United States' assertions of privileges, the Court will first determine whether a privilege applies to the testimony sought. The Government argues that two privileges apply here: (1) the deliberative process privilege, and (2) the work product privilege. If the Court finds that either applies, the testimony will consequently be protected and may not be obtained by subpoena unless Rodgers successfully overcomes the privileges' application. *See Klein*, No. 16-CR-442, 2017 WL 782326, at *4.

To start, the Court will consider whether the deliberative process privilege applies.

### A.  The Deliberative Process Privilege

The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks omitted).  It "protects predecisional [oral or written communications] 'reflecting deliberative or policy-making processes,' but not materials that are 'purely factual.'" *S.E.C. v. Cuban*, No. 3:08-CV-2050-D, 2013 WL 1091233, at *9 (N.D. Tex. Mar. 15, 2013) (quoting *Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982)). Communications "are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021). "Facts are privileged to the extent they are intertwined within analysis or evaluation." *Swanston v. City of Plano*, No. 4:19-CV-412, 2020 WL 4732214, at *2 (E.D. Tex. Aug. 14, 2020) (internal quotations and citations omitted). The "purpose of the privilege is to protect the decision-making process from the inhibiting effect that disclosure of predecisional advisory opinions and recommendations

might have on the frank discussion of legal or policy matters in writing." *Id*. (internal quotations and citations omitted). Indeed, "[t]o encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure." *Sierra Club*, 141 S. Ct. at 785.

Here, the Court finds that the deliberative process privilege applies. Rodgers' *Touhy* request asserts that he seeks the Government Witnesses to testify "to discuss the[ir] analysis of the evidence, interviews with witnesses related to the investigation, and their belief that Rodgers' version of events is the truth" (Dkt. #89, Exhibit 4). As such, the testimony sought satisfies the two requirements for qualification of the deliberative process privilege. *See Swanston,* 2020 WL 4732214, at *2 ("In order for the deliberative process privilege to apply, the discovery sought must both be deliberative and predecisional."). First, the testimony sought would be predecisional—it was generated before the adoption of the DOJ's final decision to charge Rogers. Second, the testimony sought would be deliberative in nature—it would comprise the DOJ Witnesses' opinions concerning their analysis of the evidence, which was certainly prepared to help the agency formulate its position on the case.

Rodgers further argues that the DOJ Witnesses' testimony includes factual material not subject to this privilege, "including the factual timeline of their investigation and whether Rodgers was to be called as a witness" (Dkt. #98 at p. 5). However, the Court finds this distinction unavailing. "Facts are privileged to the extent they are intertwined within analysis or evaluation." *Swanston,* 2020 WL 4732214, at *2. And to reach the conclusion to call someone as a witness or not requires much analysis and evaluation concerning the general nature of the case and tactical strategy as well as specific assessments of each witness. Thus, any factual information that would be elicited from the testimony would be so intertwined with the Government witnesses' analysis

9

and evaluation of facts that it could not be revealed separately. *See Skelton*, 678 F.2d at 39 (finding that although the sought material contained some assertions of fact, it was "an evaluation of the facts based on the writer's own values" and thus disclosure "would serve only to reveal the evaluative process by which a member of the decision-making chain arrived at his conclusions") (internal quotations and citations omitted) (cleaned up).

Therefore, the Court finds that the deliberative process privilege applies and protects the DOJ Witnesses' testimony. The Court will now consider whether the attorney work product doctrine applies.

### B. Attorney Work Product Doctrine

The work product doctrine "insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). The Supreme Court has held that this doctrine applies to criminal, as well, as civil, litigation. *United States v. Nobles*, 422 U.S. 225, 236–38 (1975). Indeed, Federal Rule of Criminal Procedure 16(a)(2) recognizes the work product privilege, exempting from disclosure "reports, memoranda, or other internal government documents made by an attorney for the government . . . in connection with investigating or prosecuting the case." FED. R. CRIM. P. 16(a)(2).

Further, the work product privilege protects tangible and intangible materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney. *In re Grand Jury Proc.*, 601 F.2d 162, 171 (5th Cir. 1979); *Adams v. Mem'l Hermann*, 973 F.3d 343, 349–50 (5th Cir. 2020). Like the deliberative process privilege, the work-product doctrine "protects only the [attorney's work product] and not the underlying facts." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982). It exists "to promote the

adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger, & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

Here, the Court finds that, like the deliberative process privilege, the work product doctrine applies to the testimony of the DOJ Witnesses. First, while Rodgers argues the work product doctrine does not apply to oral testimony, the Court is unpersuaded. The Fifth Circuit has recently clarified that the work-product doctrine applies to "both tangible and intangible work product." *Adams*, 973 F.3d at 349–50. Thus, regardless of the characterization, oral testimony is covered by the work product doctrine. Second, the testimony sought undoubtedly lies at the heart of the work product doctrine. In Rodgers's own words, he "seeks to call Mekki, Lewis, Stella, and Pollack as witnesses to discuss the[ir] analysis of the evidence, interviews with witnesses related to the investigation, and their belief that Rodgers's version of events is the truth" (Dkt. #89, Exhibit 4). The DOJ Witnesses' mental impressions and personal beliefs on whether Rodgers was telling the truth to the FTC and, more generally, their insight on the agency's general strategic and tactical approach to deciding when and why charges are brought reflects the core of the work product privilege. *See Nobles*, 422 U.S. at 238 ("At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.").

Therefore, the work product doctrine applies to protect the DOJ Witnesses' testimony. Unless Rodgers is able to overcome the application of privilege here, he may not obtain the testimony by subpoena. Accordingly, the Court now turns to whether the privileges are overcome in this case.

### C. Whether the Deliberative Process Privilege and Attorney Work Product Doctrine Are Overcome

Both the deliberative process privilege and attorney work product doctrine are not absolute.

11

*See Swanston*, 2020 WL 4732214, at *2. The deliberative process privilege can be overcome if a litigant shows that his "need for the materials and the need for accurate fact-finding override [the Government's] interest in non-disclosure." *Id.* (internal quotations and citations omitted). Courts consider the following factors when determining whether the deliberative process privilege is overcome:

> (1) the relevance of the evidence[,] (2) the availability of other evidence, (3) the government's role in the litigation, . . . (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions . . . (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law.

*Id.* (quoting *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003)).

Likewise, the work product privilege can be overcome in certain instances. *Robinson v. Tex. Auto. Dealers Ass'n*, 214 F.R.D. 432, 441 (E.D. Tex. 2003), *vacated in part on other grounds*, 2003 WL 21911333 (5th Cir. Jul. 25, 2003). The requisite showing depends on whether work product is classified as "ordinary" or "opinion" work-product. *Id.* Ordinary work-product generally consists of "primary information, such as verbatim witness testimony or objective data" collected by or for a party or a party's representative. *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 624 (5th Cir. 1976). To obtain ordinary work product, the party requesting disclosure must "show[] that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii).

On the other hand, opinion work product is afforded an almost absolute protection from discovery. *See In re Int'l Sys. and Controls*, 693 F.2d at 1240 (noting that "some courts have provided an almost absolute protection for such materials") (citations omitted); *see also Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) (quoting *In re Murphy*, 560

F.2d 326,336 (8th Cir. 1977) ("[O]pinion work product 'enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances."); *Robinson*, 214 F.R.D. at 441 ("A court cannot order production of opinion work-product absent a showing of even higher necessity, which is a rare situation if it exists at all."); *Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) (deeming opinion work product "virtually undiscoverable") (citations omitted).  Opinion work product consists of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. *In re Int'l Sys. and Controls*, 693 F.2d at 1240.  It "is the most sacrosanct of all forms of work product." *In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d. 1979).  Thus, courts have found that if the materials sought are opinion work product, a court may compel discovery "only if the party seeking the materials demonstrates a compelling need for the information." *S.E.C. v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. Oct. 16, 2006) (collecting cases).

Here, as noted, to overcome the motion to quash, Rodgers must overcome both the deliberative process privilege and work product privilege.  With that in mind, the Court begins by examining the work product privilege since it is more difficult to overcome. *See id*. (noting that the "heightened burden is nearly an absolute protection of the opinion work product").  If Rodgers cannot overcome this privilege, then it is immaterial whether Rodgers can overcome the deliberative process privilege—the work product privilege will nonetheless protect the testimony.

Since the requisite showing for disclosure depends on the classification of the work product, the Court begins by determining whether the testimony sought constitutes ordinary or opinion work product, or both.  Here, it is evident that the testimony sought would constitute opinion work product. *See Robinson*, 214 F.R.D. at 441 ("Opinion work-product . . . consists of the mental impressions, conclusions, opinions, or legal theories of an attorney or other

representative of a party. . . ."). The DOJ Witnesses' testimony that Rodgers seeks would undoubtedly reveal insights into their legal impressions, personal beliefs, and views of this case. Indeed, Rodgers does not hide that this is what he seeks. His *Touhy* request explicitly states that he seeks the DOJ Witnesses' testimony "to discuss their analysis of the evidence . . . and their belief that Rodgers's version of events is the truth" (Dkt. #89, Exhibit 4). Further, even if the DOJ Witnesses testified only as to their "interviews with witnesses related to the investigation"—Rodgers's third objective for the testimony—these, too, would constitute opinion work product. *See Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 585 (S.D. Tex. 1996) (concluding that investigatory reports that contain summaries of witness interviews are opinion work product because the reports are "suffused" with the investigator's mental impressions and conclusions); *see also Dunn*, 927 F.2d at 875 (finding that opinion work product includes notes and memoranda created by an attorney or his agent, regarding witness interviews, because they contain mental impressions).

In sum, in contrast to pure factual material, the testimony sought would reveal the DOJ Witnesses' analysis of the case at hand—namely whether Rodgers was truthful to the FTC and whether charges should be brought against Rodgers. Such testimony undoubtedly reflects the DOJ Witnesses' mental impressions regarding the case. Further, any factual information that might be gleaned from the witnesses' testimony would be suffused with legal conclusions and mental impressions, subjecting it to work product protection.

Because the testimony sought constitutes opinion work product, it is protected unless Rodgers can show there is a compelling need for the testimony. *See Brady*, 238 F.R.D. at 443 ("[I]f the materials sought are opinion work product[,] then a court may compel discovery only if the party seeking the materials demonstrates a compelling need for the information."). As noted, "this

heightened burden is nearly an absolute protection of opinion work product." *Id*. Rodgers argues that "evidence that the prior prosecution team believed Rodgers was telling the truth and intended to sponsor him as a witness in this case, rather than accusing him of being a liar and charging him with obstruction is undoubtedly relevant and weighs in Rodgers's favor" (Dkt. #98 at p. 6). Further, Rodgers argues this "evidence is unavailable elsewhere" (Dkt. #98 at p. 6).

Here, the Court finds that Rodgers has not demonstrated a compelling need to overcome the work product privilege. First, as mentioned, there are "very rare and extraordinary circumstance[s]" in which the opinion work product privilege is overcome. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994). Indeed, courts most often find that "disclosure of opinion work product is 'justified principally where the material is directly at issue, particularly if the lawyer or law firm is a party to the litigation.'" *Doe v. United States*, 2015 WL 4077440, at *8 (S.D. Fla. July 6, 2015) (quoting WRIGHT, MILLER & MARCUS, FED. PRAC. & FED. P. § 2026, p. 567 & n. 19 (3d ed.2010) (collecting cases). For example, the privilege has been overcome in "bad-faith settlement cases, where mental impressions [of the underlying counsel] are the pivotal issue in the current litigation." *Id.* (internal quotation marks and citation omitted). Where Government work product has been sought, courts have found the privilege was overcome where a party has alleged Government misconduct and the documents sought were the sole way for a party to prove his allegations. *See In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) ("[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government."). Another situation where the privilege has been found to be overcome is where the "prosecutors' mental impressions were at issue" because of allegations of prosecutor misconduct. *See Doubleday*

15

*v. Ruh*, 149 F.R.D. 601, 606 (E.D. Cal. 1993). Thus, reviewing the cases reveals a common thread among them—opinion work product privilege can be overcome when the material sought constitutes the heart of the issues in the case.

However, that is not the case here—the need for the DOJ Witnesses' testimony in this case is not like the other cases that found there was a compelling need to overcome the privilege. Here, Rodgers was charged with price fixing, conspiracy to commit offense, violation of 18 U.S.C. § 371, and obstruction of proceedings before the FTC (Dkt. #21). Thus, the crux of the Government's allegations is what *Rodgers* did, not what the prior prosecution believed he did or did not do. Unlike other cases where the privilege has been overcome to obtain opinion work product of prosecutors, this is not a situation where the Government's motivation and basis for pursuing the criminal prosecution is an issue in the case. *See In re Sealed Case*, 121 F.3d at 738. Rather, Rodgers's actions, not the prosecutors' thoughts, are the heart of the case. To belabor the point, the jury's role is to determine whether the Government's evidence at trial proves Rodgers's guilt beyond a reasonable doubt. Thus, neither the beliefs nor the conduct of the prior prosecution team are central to the case.

Further, the Court disagrees with Rodgers as to what the testimony would unearth. Though Rogers boldly contends that the testimony will show "that the prior prosecution team believed Rodgers was telling the truth and intended to sponsor him as a witness in this case," (Dkt. #98 at p. 6), the Court is unconvinced. Rodgers points to a May 22, 2020 email from Stella to other DOJ lawyers (the "Email") that was disclosed in discovery to support his conclusion that the DOJ Witnesses will testify that they "believed [he] was telling the truth and intended to sponsor him as a witness" (Dkt. #98 at p. 6). In particular, the Email states: "Poe asked me if Rodgers status had changed. I said that it had not. Poe asked if we would need Rodgers to testify in the future. I said

16

we may, though the timing is uncertain, particularly in light of the pandemic" (Dkt. #98, Exhibit A). First and foremost, the Email does not indicate that anyone believed Rodgers was telling the truth. However, Rodgers argues that the prior prosecution team must have believed he was telling the truth to the FTC because they intended to sponsor him as a witness. The Court declines to make such inference. First, Stella's ambivalent response that the DOJ "may" need Rodgers to testify does not show that the DOJ intended to sponsor him as a witness. Second, even assuming that the DOJ intended to sponsor him as a witness, that does not mean the prior prosecution team believed he was being truthful to the FTC. The scope of a witnesses' testimony can be narrow or broad and what the DOJ would have called Rodgers to testify about is unclear.

Put simply, there are many explanations for why the prior prosecution team did not charge Rodgers that have no bearing on whether they believed his testimony to the FTC. Indeed, the Government makes charging decisions based on many factors that are unrelated to guilt. *See United States v. Reed*, 641 F.3d 992, 993 (8th Cir. 2011). However, the Court would have to accept many assumptions and discount just as many plausible ones to conclude that the DOJ Witnesses would testify that they "believed Rodgers was telling the truth." In short, the Court is not convinced that the testimony sought is anything more than a "fishing expedition." As such, Rodgers has not shown a compelling need to overcome the work product privilege. *See Reynolds*, 345 U.S. at 11 ("[T]he showing of necessity which is made will determine how far the Court should probe in satisfying itself that the occasion for invoking the privilege is appropriate."). Nonetheless, Rodgers argues that even if the work product privilege applies, the Government waived it (Dkt. #98 at p. 7). Thus, the Court turns to address Rodgers's waiver argument.

### D. Whether the Work Product Privilege Was Waived

Rodgers argues that the Government waived any privilege by disclosing the Email during

discovery (Dkt. #98 at p. 7). Disclosure of work product can result in waiver of the work product protection if it is disclosed to adversaries or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material. *Robinson*, 214 F.R.D. at 443. "What constitutes a waiver with respect to work product materials depends, of course, upon the circumstances." *Nobles*, 422 U.S. at 239 n.14. Importantly, "[d]isclosure typically only waives work product protection with respect to any document actually disclosed." *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 442 (W.D. Tex. 2017); *see also Brady*, 238 F.R.D. at 444 (same). This is because "[n]ot every disclosure of information that is arguably work product is inconsistent with the goals of an adversarial dispute resolution process." *Varel v. Banc One Cap. Partners, Inc.*, No. CA3:93-CV-1614-R, 1997 WL 86457, at *3 (N.D. Tex. Feb. 25, 1997).

In other words, "[a] finding of waiver as to certain materials does not necessarily mean that the protection is waived as to all materials on the same subject matter." *In re Application of Chevron Corp., v. 3TM Consulting, LLC*, No. H-10-134, 2011 WL 13135155, at *2 (S.D. Tex. Jan. 10, 2011). Indeed, subject-matter waiver of the work product privilege is usually reserved for "instances where the quality and substance of an attorney's work product have been directly placed at issue in the litigation by the party asserting the privilege." *Baylor Univ.*, 320 F.R.D. at 442. For example, "courts have recognized subject-matter waiver of work product in instances where a party deliberately disclosed work product in order to gain a tactical advantage and in instances where a party made testimonial use of work product materials and then attempted to invoke the work product doctrine to avoid cross-examination." *Varel*, 1997 WL 86457, at *3 (citing cases). Stated differently, courts have found that "a general subject-matter waiver of work product immunity is warranted only when the facts relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to other facts relevant

to the same subject matter." *Id.*

Here, the Court finds that the Government waived its work product privilege by disclosing the Email to Rodgers's counsel. *See id.* (finding that party waived any claim to work product protection by making letter available to the other side). But, as other courts have found, the waiver is limited to only that which was disclosed. In other words, disclosure of the one-page email did not result in the waiver of the entire work product privilege on the subject. Thus, disclosure of the document does not provide support for Rodgers's argument that the DOJ Witnesses can testify because there has been a waiver. This conclusion is supported by ample case law finding that wholesale subject-matter waiver of work product protection should only be found in limited circumstances—circumstances not even remotely close to those present here. *See id.*; *Baylor Univ.*, 320 F.R.D. at 442; *Brady*, 238 F.R.D. at 444. For example, subject matter waiver has been found where parties have placed their work product at issue or where they have tactically disclosed portions of their work product, and it would be unfair to deny the other party access to the rest. *See Varel*, 1997 WL 86457, at *3. Here, the Government has not put the prior prosecution team's beliefs at issue, nor has it gained an unfair advantage over Rodgers by disclosing the Email. Accordingly, though disclosure of the Email resulted in a waiver of privilege over the email, it does not mean Rodgers can obtain the DOJ Witnesses' testimony on the basis of a waiver theory.

In sum, the Court finds that the Government's motion to quash should be granted. The testimony that Rodgers seeks from the DOJ Witnesses' is at the core of the deliberative process privilege and work product privilege. *See FTC v. Grolier, Inc.* 462 U.S. 19, 31 (1983) (Brennan, J., concurring) (stating that the ability of an adverse party to "gain insight into an agency's general strategic and tactical approach to deciding when suits are brought . . . and on what terms they may be settled" should be protected against). Though the Court is sympathetic to Rodgers's request,

the Court also recognizes the vital role of the work-product doctrine in the criminal justice system. *See Nobles*, 422 U.S. 225 at 238 ("Although the work product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in ensuring the proper functioning of the criminal justice system is even more vital."). And while defendants have the benefit of certain constitutional rights like those enumerated in the compulsory process clause, a defendant does not have "an unfettered right to offer testimony that is incompetent, privileged or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410–11 (1988).

## CONCLUSION

It is therefore **ORDERED** that the United States' Motion to Quash Defendant Rodgers's Subpoenas for Testimony by Current and Former U.S. Department of Justice Attorneys (Dkt. #89) is hereby **GRANTED.**

**IT IS SO ORDERED.**

SIGNED this 8th day of April, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE